David A. Garcia, CA Bar No. 218356
david.garcia@ogletree.com
Carlos Bacio, CA Bar No. 328466
carlos.bacio@ogletree.com
Vanoohi Torossian, CA Bar No. 328536
vanoohi.torossian@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:   714-800-7900
Facsimile:   714-754-1298

Attorneys for Plaintiff Railpros, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| RAILPROS, INC.,<br><br>                Plaintiff,<br><br>        vs.<br><br>OLSSON, INC., A Nebraska corporation; KAREN HANKINSON, an individual; LANCE KIPPEN, an individual; and DOES 1 through 50 inclusive,<br><br>                Defendants. | Case No. Pending<br><br>**PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES**<br><br>**1. BREACH OF FIDUCIARY DUTY**<br>**2. BREACH OF DUTY OF LOYALTY**<br>**3. MISAPPROPRIATION OF TRADE SECRETS**<br>**4. DEFEND TRADE SECRETS ACT— VIOLATION OF 18 U.S.C. § 1839**<br>**5. UNFAIR BUSINESS PRACTICES**<br>**6. VIOLATION OF COMPREHENSIVE DATA ACCESS AND FRAUD ACT; CALIFORNIA PENAL CODE § 502**<br><br>[Assigned for all purposes to The Honorable TBD, Dept. TBD]<br><br>Action Filed:      Pending<br>Trial Date:        None Set |

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

## **PARTIES, VENUE, AND JURISDICTION**

1.      Plaintiff RAILPROS, INC. ("Plaintiff") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California. Plaintiff operates a business in California and in many areas in the United States.

2.      Defendant OLSSON, INC. is, and at all times herein mentioned was, a corporation that has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

3.      Defendant KAREN HANKINSON is, and at all times herein mentioned was, an individual who maintains a primary place of residence in Tustin, California. Karen Hankinson is a former employee of Plaintiff, its former Vice President and Senior Project Manager and Vice President of Traffic Engineering.

4.      Defendant LANCE KIPPEN is, and at all times herein mentioned was, an individual who previously reported to Defendant Hankinson and who directed substantial railway projects and numerous employees, some of whom were located in Orange County, California. Lance Kippen further co-conspired with Karen Hankinson in Orange County, California, to wrongfully take Plaintiff's projects and employees. Lance Kippen is a former employee of Plaintiff, its former Director of Industry and Public Projects.

5.      Defendants Olsson, Inc., Karen Hankinson, and Lance Kippen shall hereinafter collectively be called the "Defendants."

6.      Plaintiff is ignorant of the true names and capacities of defendant sued herein as DOES 1 through 50, inclusive, and therefore sue those defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

/ / /

2
PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

7. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, defendants DOE 1 through DOE 50 were agents, servants, and employees of Defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, and employees, and with the permission and consent of Defendants.

8. Venue is proper in this Court as many of the events giving rise to this action occurred in Orange County, California, one or more of the named Defendants reside, transact business, or have offices in this county and the acts and omissions alleged herein took place in this county.

9. Unlimited jurisdiction is proper in this Court as the amount in controversy is greater than jurisdictional threshold.

## GENERAL ALLEGATIONS

10. Plaintiff is in the business of providing rail specialists, rail project managers, safety and training experts, and engineering professionals to clients in the railroad industry.

11. Defendant Olsson is an engineering and design firm. Prior to acquiring Defendant Hankinson and Defendant Kippen's team, Defendant Olsson had not established railway-traffic project expertise to synchronize rail traffic and roadway signals.

12. Plaintiff invested vast resources over many years to develop its Rail/Traffic Preemption and Public Project team to install rail signal systems for its clients. Plaintiff RailPros invested tremendous resources to create its Rail/Traffic engineering business.

13. Defendant Karen Hankinson was employed by Plaintiff since at least 2002 until March 3, 2023 before she abruptly resigned to go to work for a direct competitor of Plaintiff, Defendant Olsson. Defendant Hankinson last held the position of Vice President and was the leader of the Traffic Engineering Division for Plaintiff until

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

March 2023, managing a wide variety of grade crossing related engineering projects in multiple states, and overseeing numerous employees throughout and at the time of her resignation in 2023.  While still employed by Plaintiff, on March 3, 2023, Defendant Hankinson proudly announced that she had already secured her entire traffic and railroad crossing engineering team to join Defendant Olsson. Defendant Hankinson is a Registered Traffic Engineer with the state of California.

14.    Defendant Lance Kippen was employed by Plaintiff from approximately November 2018 to March 3, 2023, as its former Director of Industry and Public Projects. Like Defendant Hankinson, Defendant Kippen managed key RailPros projects and oversaw numerous of Plaintiff's employees throughout and at the time of his resignation in 2023.

15.    In conjunction with their employment for Plaintiff, Defendants Hankinson and Kippen acknowledged receipt of and agreed to comply with Plaintiff's Confidentiality policy:

**Business Use Only**
Any Company-owned technology resources and all files stored on them are the sole property of the Company and may only be used for business-related purposes. The Company provides Internet and email access to employees for legitimate business use in the course of an employee's assigned duties. These policies apply to employees working remotely as well.

**Confidentiality**
The Company takes steps to maintain the confidential nature of its confidential and proprietary information. Confidential Information includes, but is not limited to, proprietary technical, business, financial, supplier, client information, sales figures, business plans and projections, profit and performance reports, vendor information, growth strategies, client lists, product and services information, and techniques and methods of operation that are not readily available to the public and that are maintained as confidential by the Company. Employees may not discuss with outsiders/competitors or use any Confidential Information or trade secret information without prior authorization from the Company. As employees of the Company, employees have

4

access to Confidential Information of clients, vendors, and others in the performance of their job duties. All employees must maintain as confidential all Confidential Information. Employees are prohibited from disclosing such Confidential Information and from using such information for personal gain. Nothing in this policy prohibits an employee from using Confidential Information, if necessary, to bring any concern or complaint of any unlawful activity to the attention of a government agency. Employees may not disclose trade secret information of the Company as defined under the Defend Trade Secret Act of 2016 and applicable state trade secret laws.

[* * *]

To preserve the integrity and profitability of RailPros, employees are prohibited from engaging in activities that compete or conflict with those of the Company. As a general rule, employees are prohibited from working for, or on behalf of, competitors or clients of the Company while employed by RailPros.

(RailPros' Confidentiality Policy.)

16. By signing the Employee Handbook Acknowledgement Form, Defendants acknowledged receiving and reading the Company's Employment Policies, including a provision covering confidential information and their respective duties not to disclose said information to anyone who does not need to know such information, even after their employment with RailPros ends. RailPros's policies for employees applied to all of its employees, especially to managing agents Defendants Hankinson and Kippen.

17. Defendant Kippen acknowledged receiving the Confidentiality Policy in the Employee Handbook on January 2, 2019.

18. Defendant Hankinson acknowledged receiving the Confidentiality Policy in the Employee Handbook on October 24, 2019.

/ / /

/ / /

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

## DEFENDANTS HANKINSON'S AND KIPPEN'S DISLOYALTY

19.    On March 3, 2023, Defendants Hankinson and Kippen suddenly informed Plaintiff that they were quitting their jobs to set up a competing venture with a RailPros competitor, Defendant Olsson.

20.    Without authorization, minutes later, on March 3, 2023, Defendants Hankinson and Kippen used their RailPros business e-mail to inform over 100 of RailPros' clients, subcontractors, and other employees of their "new" e-mail address with Defendant Olsson, at "khankinson@olsson.com" and "lkippen@olsson.com."

21.    On March 3, 2023, Plaintiff learned that Defendants had previously met with key RailPros' engineers and employees, approximately 17 of them, to recruit them to leave with them to Defendant Olsson.

22.    In February 2023, while she was still Vice-President of Plaintiff's Traffic Engineering Division, Defendant Hankinson met with multiple RailPros clients to invite them to terminate their relationship with Plaintiff in order to work with her at Olsson.

23.    In 2022 and through March 2023, Defendant Olsson conspired with Defendant Hankinson and Defendant Kippen to take Plaintiff's Rail/Traffic Preemption and Public Project team to Defendant Olsson. Defendant Olsson conspired with them because it did not have the capability and project expertise to synchronize rail traffic and roadway signals.

24.    While they were still managers working for Plaintiff, before March 2023, Defendants Hankinson and Kippen coordinated with Olsson to take from Plaintiff over 90% of its rail-traffic synchronization work to Defendant Olsson.

25.    On March 3, 2023, in response to a Plaintiff's customer's written inquiry about Defendant Hankinson "changing companies," Hankinson responded in writing, "Yes with my team!"

26.    Before leaving their employment with Plaintiff, Defendants Hankinson and Kippen, on behalf of Defendant Olsson, met with numerous key employees of

6

Plaintiff and, based on information and belief, Defendants solicited, negotiated, and obtained commitments from at least 17 key employees of Plaintiff to work for Olsson instead, including:

1) Terrel A. Anderson, Plaintiff's former MIPPS Projects Manager, who submitted his resignation on March 3, 2023 (the same day on which Defendants resigned their employment with Plaintiff), effective March 17, 2023, to join Defendant Olsson;

2) Nicole Munoz Aquino, Plaintiff's Design Engineer I, who submitted his resignation on March 6, 2023, effective March 17, 2023, to join Defendant Olsson;

3) Travis Baily, Design Senior Engineer V, who submitted his resignation on March 3, 2023 (the same day on which Defendants resigned their employment with Plaintiff), effective March 17, 2023, to join Defendant Olsson;

4) Leo Craig, Senior Construction Manager, who submitted his resignation on March 6, 2023, effective March 17, 2023, to join Defendant Olsson;

5) Mark J. Esposito, Engineering Manager VI, submitted his resignation on March 7, 2023, effective March 20, 2023, to join Defendant Olsson;

6) Richard Koerner, MIPPS Public Projects Manager who submitted his resignation on March 3, 2023 (the same day on which Defendants resigned their employment with Plaintiff), effective March 17, 2023, to join Defendant Olsson;

7) Payton Donald Lee, Engineering Intern, who submitted his resignation on March 3, 2023 (the same day on which Defendants resigned their employment with Plaintiff), effective March 24, 2023, to join Defendant Olsson;

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

8) Lars Wilber Leemkuil, MIPPS Public Projects Engineer, who submitted his resignation on March 13, 2023, effective March 24, 2023, to join Defendant Olsson;

9) Jacky Chun Wah Loh, Design Engineer II who submitted his resignation on March 6, 2023, effective March 17, 2023, to join Defendant Olsson;

10) Rigoberto Moreno, Design Engineer IV who submitted his resignation on March 6, 2023, effective March 17, 2023, to join Defendant Olsson;

11) Casey Murdie, Design Engineer VI, who submitted her resignation on March 6, 2023, effective March 20, 2023, to join Defendant Olsson;

12) Phillip Adrian Rodriguez, Engineer IV, who submitted his resignation on March 3, 2023 (the same day on which Defendants resigned their employment with Plaintiff), effective March 17, 2023, to join Defendant Olsson;

13) Leah Devin Russel, Design Engineer III, who submitted her resignation on March 6, 2023, effective March 17, 2023, to join Defendant Olsson;

14) Stephanie Schaubert, Office Administrator for Engineering, who submitted her resignation on March 27, 2023, effective March 30, 2023, to join Defendant Olsson;

15) Allison Traylor, Design Engineer II, who submitted her resignation on March 6, 2023, effective March 6, 2023, to join Defendant Olsson;

16) Christopher Wiggins, Construction Manager, who submitted his resignation on March 3, 2023, effective March 8, 2023, to join Defendant Olsson;

17) Ryan Scott Wonola, MIPPS Public Projects Manager, who submitted his resignation on March 6, 2023, effective March 17, 2023, to join Defendant Olsson;

8

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

27. In their managerial positions for Plaintiff, Defendants Hankinson and Kippen had unique access to Plaintiff's proprietary business information, including the cost, performance and status of pending projects valued in the millions of dollars, Plaintiff's personnel employees' salaries and costs, and insider information about Plaintiff's profits and revenues.

28. Before quitting RailPros, Defendants instructed or caused RailPros's clients to cancel RailPros's services, modify their financial arrangements in order to ease the  transfer of accounts to Defendant Olsson, and rerouted business opportunities to Defendant Olson, or attempting to do so, prior to leaving their employ at RailPros.

29. On March 3, 2023, while still employed by Plaintiff, Defendant Hankinson proudly announced to the Director of Public Works/City Engineer of Dana Point, that she was joining Defendant Olsson and taking her "team."

30. Upon information and belief, it is hereby alleged that Defendants, for their own personal profit, shared Plaintiff's proprietary project information with Defendant Olsson to plan the transfer of their employer's business to Defendant Olsson.

31. On or about June 2, 2023, Plaintiff sent Defendants a letter reminding them that they were subject to confidentiality obligations owed to Plaintiff, and demanding that they immediately cease and desist all activities that violate their confidentiality duty to protect Plaintiff's intellectual property.

## **FIRST CAUSE OF ACTION - BREACH OF FIDUCIARY DUTY**

(Against defendants Karen Hankinson and Lance Kippen, including DOES 1 through 50)

32. Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 31 of this Complaint, as though fully set forth herein.

33. As top managerial employees of RailPros, Defendants Hankinson and Kippen, and each of them, owed RailPros a fiduciary duty, but each breached this duty

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

owed to RailPros, and as a result RailPros has incurred damages. As key managerial employees, Defendants had the duty to act with the utmost good faith in the best interests of RailPros.

34.   Instead of using their managerial authority and the trust by RailPros in them to exercise their managerial oversight authority in the best of interests of RailPros, Defendants competed with RailPros even while still working for RailPros, including by: soliciting RailPros's employees and promising them certain salaries and business opportunities with its competitor Defendant Olsson; meeting with Defendant Olsson to take RailPros's business opportunities; and seeking business opportunities for Defendant Olsson, and rerouting business opportunities to Defendant Olsson, or attempting to do so, prior to leaving their employ by RailPros.

35.   Also, based on information and belief, Defendants Hankinson and Kippen knowingly misrepresented to RailPros' employees and to its clients, that RailPros' Rail/Traffic Preemption and Public Project would no longer be able to service clients with the same attention and skill as before, in order to mislead key Plaintiff employees and clients into agreeing to meet with Olsson to take away Plaintiff's business.

36.   RailPros is entitled to recover from Defendants Hankinson and Kippen jointly and severally, all damages directly and proximately caused by this breach.

**SECOND CAUSE OF ACTION - BREACH OF DUTY OF LOYALTY**

(Against defendants Karen Hankinson and Lance Kippen, including DOES 1 through 50)

37.   Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 36 of this Complaint, as though fully set forth herein.

38.   As top managerial employees of RailPros, Defendants Hankinson and Kippen owed RailPros a duty of loyalty, but they breached their duty owed to RailPros, and as a result RailPros has incurred damages.

/ / /

10

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

39. Defendants served in key managerial positions, Vice President and Director, within RailPros, and knowingly assisted a competitor of Plaintiff to divert business opportunities that belonged to RailPros, to Defendant Olsson.

40. An employee's duty to his or her employer includes the duty to not take personal advantage of a business opportunity that belongs to it, here Plaintiff RailPros, solicit employees to leave their employment while working for Plaintiff, or divert RailPros's business to Defendant Olsson.

41. Defendants owed a duty of loyalty to RailPros. California Labor Code sections 2860 and 2863. Labor Code section 2860 states: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, during or after the expiration of the term of his employment."

42. Labor Code section 2863 provides: "An employee who has any business to transact in his own account, similar to that entrusted to him by his employer, shall always give the preference to the business of the employer."

43. Defendants Hankinson and Kippen planned to (and did) take material steps (at a minimum) to join a competing business while still employed by RailPros, conducted meetings with RailPros's employees while serving themselves as full-time employees of RailPros, to solicit the employees to work for Olsson, and competed with RailPros through Defendant Olsson while still working for RailPros, including by: soliciting Plaintiffs' employees and promising them certain salaries and business opportunities; and seeking business opportunities for Defendant Olsson, and rerouting them to Defendant Olsson prior to leaving the employ of RailPros.

44. From at least February 2023, Defendants solicited approximately 17 RailPros' key employees, to leave RailPros and offered them employment with Olsson.

/ / /

/ / /

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

45. Based on information and belief, Defendants represented to RailPros' clients and engineers that RailPros' Rail/Traffic Preemption and Public Project works were being eliminated and would no longer be able to service clients.

46. Based on information and belief, Defendants continue to spread disinformation regarding RailPros into the marketplace in which RailPros operates.

47. RailPros is entitled to recover from each of the Defendants, jointly and severally, all damages directly and proximately caused by this breach.

## THIRD CAUSE OF ACTION – MISAPPROPRIATION OF TRADE SECRETS

(Against Defendants Karen Hankinson and Lance Kippen, including DOES 1 through 50; Civil Conspiracy against Defendant Olsson)

48. Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 47 of this Complaint, as though fully set forth herein.

49. Upon information and belief, it is hereby alleged that Defendant Kippen and the DOE Defendants were co-conspirators with Defendant Hankinson, and knew or should have known that she intended to improperly and illegally misappropriate Plaintiff's trade secrets, including those trade secrets acquired through her managerial oversight of RailPros' ongoing projects and planned projects, in order to unjustly enrich themselves. Upon information and belief, it is hereby further alleged that Defendant Kippen and the DOE Defendants agreed with Defendant Hankinson's actions, and intended for her to commit an illegal misappropriation of trade secrets and provide those trade secrets to Defendant Olsson.

50. Plaintiff has spent significant money, time, and effort acquiring and developing its trade secrets, including those trade secrets acquired in Plaintiff's procurement of certain projects, in exchange for significant compensation.

51. Plaintiff's trade secrets have both actual and future economic value arising from the significant market advantage they provide.

52. Plaintiff has taken reasonable steps to protect the secrecy of its

12

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

confidential information, including setting up passwords to restrict access to email communications, establishing a confidentiality policy in the employee handbook, and expressly instructing Defendant Hankinson and Defendant Kippen in the Confidentiality Policy not to share client analysis information with anyone other than RailPros.

53. In or around February 2023, and prior to ending their employment with Plaintiff, Defendants misused Plaintiff's confidential trade secrets, including information related to the profitability of ongoing projects Plaintiff was engaged in, Plaintiff's key client project progress analysis, quotations for jobs and services performed by Plaintiff, bidding opportunities, historical pricing data, profit margins, cash flow analysis of historical sales trends, staffing ratios and planned compensation increases for Plaintiff's staff.

54. The specific trade secrets misappropriated by Defendants include:

- RailPros's key client contact information and the nature of the projects that were being serviced by RailPros, including the names, addresses, phone numbers, and email addresses of key decision makers. *State Farm Mut. Automobile Ins. Co. v. Dempster*, 174 Cal. App. 2d 418 (1959) ("'[T]he names, addresses and telephone numbers of policyholders' are protectable trade secrets.")

- The underlying costs, profit margins, and pricing information, for key projects of RailPros's clients being serviced exclusively by RailPros. *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1452 (2002) (holding that "pricing," "profit margins," "pricing concessions" are protectable trade secrets).

- The impact on RailPros's project costs and pricing comprised of RailPros's employee's costs and incentive pay to key employees, including the rates and amounts of insurance premiums, salary history and information, of RailPros's employees such as engineers,

13

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

administrative staff, and support personnel, and the impact of these costs on projects.

55. Defendants Hankinson and Kippen, in breach of the Confidentiality Policy, abused their access to proprietary information of Plaintiff, and improperly and illegally misappropriated Plaintiff's trade secrets and disclosed the information to third parties and to Defendant Olsson, for their own personal profit.

56. Defendants Hankinson and Kippen's conduct is in violation of the Uniform Trade Secrets Act, adopted in California as California Civil Code Sections 3426-3426.11.

57. **Civil Conspiracy with Olsson**: RailPros was harmed by Defendants' violation of its rights, as set forth above, because each was part of a conspiracy to commit such misconduct. Defendants each agreed to commit wrongful acts. Such an agreement is implied by the conduct of the Defendants in meeting through March 2023 to share Plaintiff's business plans with Defendant Olsson, to use Plaintiff's trade secrets and valuable RailPros information to solicit employees and customers of Plaintiff to join a competing venture to take business opportunities belonging to RailPros based, in large part, on the misuse of Plaintiff's secret and valuable business information. Defendants and DOES Defendants agreed with each other to interfere and commit these unfair business practices.

58. As a direct and proximate result of Defendants Hankinson and Kippen's actions, Plaintiff has been injured and Defendants have been unjustly enriched.

59. Defendants Hankinson and Kippen's acquisition and subsequent disclosure of Plaintiff's confidential information and trade secrets was a substantial factor in causing Plaintiff's injury, and has resulted in Defendants' unjust enrichment.

60. Defendants Hankinson and Kippen's wrongful conduct in misappropriating Plaintiff's confidential information and trade secrets, unless and until enjoined and restrained by order of this Court, has and will cause great and irreparable injury to Plaintiff's business as Plaintiff faces the threat of losing

14

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

substantial revenue, market share and advantage, and will continue to do so in the future if its valuable trade secrets are utilized or disclosed by Defendants, or any other third party.

61.    Alternatively, Plaintiff seeks an award of reasonable royalties under section Civil Code 3426.3, subdivision (b), if neither actual loss nor unjust enrichment are provable.

## FOURTH CAUSE OF ACTION – UNFAIR BUSINESS PRACTICES

(Against All Defendants, including DOES 1 through 50)

62.    Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 61 of this Complaint, as though fully set forth herein.

63.    Upon information and belief, it is hereby alleged that Defendant Olsson, and the DOES Defendants, knew or should have known that Defendants Hankinson and Kippen intended to unfairly interfere with Plaintiff's client accounts and employee relationships, as well as create a competing business in order to unjustly enrich themselves. Upon information and belief, it is hereby further alleged that Defendant Olsson agreed with Defendant Defendants Hankinson and Kippen's actions, and intended for her to fraudulently and unfairly interfere with Plaintiff's suppliers, clients, and employees and direct those parties to do business with or work for Defendant Olsson, in direct competition with Plaintiff.

64.    California Business and Professions Code § 17200 *et seq*. ("UCL") prohibits, among other things, unlawful, fraudulent, deceptive, and unfair business practices.

65.    In or around February 2023, Defendant Hankinson met with Defendant Olsson to plan the unfair misuse of Plaintiff's business information, amongst other things, including its inside information about the status of its projects, key employees' wage costs, profitability of certain projects, bidding opportunities, and key customer preferences.

/ / /

15

66. Defendant Hankinson accepted phone calls from Plaintiff's clients and diverted them to Olsson, with Olsson's approval.

67. In or around February and March 2023, Defendants Hankinson and Olsson persuaded 17 engineers employed by Plaintiff to work for Defendants at Defendant Olsson. Upon information and belief, it is hereby alleged that  Defendants Hankinson and Kippen solicited Plaintiff's other employees to quit and go work for her at Defendant Olsson while they were still managers employed by Plaintiff. Defendant Hankinson and Defendant Kippen intended to fraudulently conceal from Plaintiff that they were conspiring with each other to make offers to as many of Plaintiff's engineers as possible to directly compete with Plaintiff in the Rail/Traffic Preemption and Public Project works.

68. Upon information and belief, it is hereby alleged that as part of their conspiracy, Defendants directed business to Defendant Olsson in order to unfairly compete against Plaintiff, solicited Plaintiff's employees, and fraudulently informed Plaintiff's clients that Plaintiff was leaving the business permanently.

69. As a direct and proximate result of Defendants' unfair business practices, Plaintiff has been damaged.

### FIFTH CAUSE OF ACTION –
### VIOLATION OF THE DEFEND TRADE SECRETS ACT
(Against Defendants Karen Hankinson and Lance Kippen, including DOES 1 through 50; Civil Conspiracy against Defendant Olsson)

70. Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 69 of this Complaint, as though fully set forth herein.

71. The Defend Trade Secrets Act ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

/ / /

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

72. Plaintiff's trade secrets relate to engineering services used or intended for use in interstate and foreign commerce.

73. In their positions as sales managers and account executives of Plaintiff, Defendants Hankinson and Kippen had access to certain valuable information of RailPros.

74. Upon information and belief, it is hereby alleged that Defendant Olsson was a co-conspirator with Defendants Kippen and Hankinson, and knew or should have known that Defendants Kippen and Hankinson intended to improperly and illegally misappropriate Plaintiff's trade secrets, in order to unjustly enrich themselves. Upon information and belief, it is hereby further alleged that Defendant Olsson agreed with Defendants Kippen and Hankinson's actions, and intended for them to commit their illegal misappropriation of trade secrets and provide those trade secrets to Olsson.

75. Plaintiff's confidential project financial metrics, profitability of projects, staffing costs, and contributions of key employees , is not generally available in the public domain.

76. Plaintiff has spent significant money, time, and effort acquiring and developing its trade secrets, including those trade secrets that Plaintiff uses to secure new business from existing customers.

77. Plaintiff's trade secrets have both actual and future economic value arising from the significant market advantage they provide.

78. Plaintiff has taken reasonable steps to protect the secrecy of its confidential information, including setting up passwords to restrict access to email communications, requiring employees to acknowledge confidentiality policies, establishing a confidentiality policy in the employee handbook, restricting levels of access to its trade secrets to limited employees, and expressly instructing the Defendants not to share customer lists and pricing information with anyone.

/ / /

/ / /

17

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

79. The specific trade secrets misappropriated by Plaintiff's employee's costs, including incentive pay, the rates and amounts of insurance premiums, salary history and information, of Plaintiff's employees.

80. Based on information and belief, in or around February to March 2023, and prior to abruptly ending their employment with Plaintiff, Defendants took Plaintiff's confidential trade secrets to create a new team to compete with Plaintiff.

81. Defendants' conduct is in violation of the Defense Trade Secrets Act of 2016, adopted in 18 U.S.C. § 1839.

82. As a direct and proximate result of the actions of Defendants, Plaintiff has been injured and Defendants have been unjustly enriched.

83. Defendants acquisition and subsequent use and disclosure of Plaintiff's trade secrets was a substantial factor in causing Plaintiff's injury, and has resulted in Defendants' unjust enrichment.

84. Defendants' wrongful conduct in misappropriating Plaintiff's confidential information and trade secrets, unless and until enjoined and restrained by order of this Court, has and will cause great and irreparable injury to Plaintiff's business as Plaintiff faces the threat of losing substantial revenue, market share and advantage, and will continue to do so in the future if its valuable trade secrets are utilized or disclosed by Defendants, or any other third party.

85. Plaintiff is entitled to actual damages from Defendants, and each of them, and for attorney's fees and costs.

**SIXTH CAUSE OF ACTION –VIOLATION OF COMPREHENSIVE DATA ACCESS AND FRAUD ACT; CALIFORNIA PENAL CODE § 502**

(Against defendants Karen Hankinson and Lance Kippen, including DOES 1 through 50)

86. Plaintiff hereby incorporates by reference and re-alleges paragraphs 1 through 85 of this Complaint, as though fully set forth herein.

/ / /

18

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

87. Upon information and belief, it is hereby alleged that Defendant Kippen and DOES Defendants were co-conspirators with Defendant Hankinson, and knew or should have known that Defendant Hankinson intended to illegally access and misuse Plaintiff's computer system and confidential information in order to unjustly enrich themselves. Upon information and belief, it is hereby further alleged that Defendants agreed with Defendant Hankinson's actions.

88. In or around early 2023, Defendants Hankinson and Kippen sent multiple emails from their work email provided by Plaintiff, to unauthorized email recipients. Those emails contained Plaintiff's confidential information, including information related to Rail/Traffic Preemption and Public Project projects being provided to current clients, historical pricing data, profit margins, cash flow analysis of historical sales trends, staffing ratios and planned compensation increases for Plaintiff's staff.

89. Based on information and belief, without Plaintiff's permission, Defendants Hankinson and Kippen knowingly accessed Plaintiff's confidential information, which was stored on its computers and servers, e-mailed said confidential information to unauthorized email recipients, and, in conjunction with Defendant Kippen, is using the stolen data to devise or execute a scheme to deceive and compete with Plaintiff and to profit from Plaintiff's confidential information.

90. Defendants Hankinson and Kippen's conduct violates California Penal Code Section 502.

91. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1030(a)(2)(C), Plaintiff has suffered and will continue to suffer financial loss well in excess of $5,000.00, including but not limited to reputational harm, as well as the expenditures that will be necessary to investigate, assess and remedy Defendants' violations of this statute.

92. As a direct and proximate result of Defendants Hankinson and Kippen's violations of California Penal Code Section 502, Plaintiff has suffered damages and loss and is entitled to compensatory damages, injunctive relief, and any other equitable

19
PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

relief and reasonable attorney's fees allowable pursuant to Penal Code Section 502(e)(1) and (2).

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands that all claims hereinabove be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For preliminary and permanent orders enjoining Defendants from possessing, using or disclosing any of Plaintiffs' trade secrets and/or any confidential or proprietary information;

2. For preliminary and permanent orders requiring Defendants to account for and return to Plaintiff any and all of Plaintiff's property, including its trade secrets and any confidential, and/or proprietary information belonging to Plaintiffs;

3. For an order requiring the inspection of Defendant Hankinson's, Defendant Kippen's, and DOE Defendants' e-mail, servers, hard drives, computer(s), mobile devises, PDAs, USB drives and other computer equipment, including any hosted storage space, by a forensic expert to ensure that Plaintiff's trade secrets and confidential information and/or proprietary data do not exist on such devices;

4. For an award of compensatory, general and special damages in an amount according to proof;

5. For statutory damages as appropriate; or restitution as appropriate, including disgorgement of profits unlawfully obtained by Defendants, and based on Defendants' unjust enrichment;

6. Alternatively, Plaintiffs seek an award of reasonable royalties under section Civil Code 3426.3, subdivision (b), if neither actual loss nor unjust enrichment are provable;

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES

7.      For an award of punitive damages in an amount against Defendants sufficient to punish and make an example of Defendants;

8.      For reasonable attorney's fees;

9.      For prejudgment and post-judgment interest;

10.     For costs of suit incurred herein; and

11.     For such other and further relief as the Court may deem proper.

DATED:  August 25, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  Carlos Bacio
     David A. Garcia
     Carlos Bacio
     Vanoohi Torossian

Attorneys for Plaintiff Railpros, Inc.

21

PLAINTIFF RAILPROS, INC.'S COMPLAINT FOR DAMAGES